## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JEAN B. GERMAIN                              *

Plaintiff                                    *

v                                            *          Civil Action No. JFM-14-1536

SCOTT S. OAKLEY and                          *
ROBIN WOOLFORD
                                             *
Defendants
                                           ***

## MEMORANDUM

In response to the above-entitled civil rights complaint, defendant Woolford[1] filed a motion to dismiss or for summary judgment. ECF 18. Plaintiff opposes the motion. ECF 24. This court denied plaintiff's request for discovery pursuant to Fed. R. of Civ. Proc. 56(d) in its November 2, 2016 memorandum and order. ECF 22 and 23. A hearing is not necessary for the disposition of the claims pending before this court. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, defendant's motion, construed as a motion for summary judgment, shall be granted and the complaint dismissed.

### Background

By his complaint, plaintiff Jean Germain, an inmate committed to the custody of the Maryland Division of Correction and confined at North Branch Correctional Institution ("NBCI"), alleges that he has been denied meaningful access to the courts for purposes of litigating specific claims regarding the conditions of his confinement by virtue of the improper dismissals of complaints he filed with the Inmate Grievance Office ("IGO"). ECF 1. The

---

[1]    Defendant Scott Oakley, the former director of the Inmate Grievance Office, was never properly served with the complaint. For the reasons stated herein, the complaint against him shall be dismissed without further attempts at service.

specific claims plaintiff alleges were thwarted by the IGO's refusal to hear his claims are listed below.

Scalding Water in Showers (July 14, 2011 letter) – ARP NBCI-2071-12

Plaintiff claims that since 2011 he has been forced to endure "scalding hot water just to shower." ECF 1 at p. 3. He states that he exhausted administrative remedies at the institutional level[2] and filed a grievance with the IGO which was received on May 6, 2011. *Id.*

On July 14, 2011, defendant Woolford sent a letter to plaintiff requesting medical records. *See* ECF 1-1 at p. 1. Plaintiff's responded to the letter "several times" and explained that he did not have access to the records. Plaintiff also told Woolford that the records were "not relevant" for a preliminary review of his complaint. ECF 1 at pp. 3 – 4. Plaintiff states that "Woolford destroyed plaintiff's mails (sic)." *Id.* at p. 4.

Plaintiff alleges that due to Woolford's actions, he has been forced to endure "these harsh prison conditions with no ability to ever challenge them through the ARP process." *Id.* He adds that his inability to exhaust administrative remedies has prohibited him from accessing the state courts for a remedy. *Id.*

Unspecified claims (December 18 and 19, 2012 letters) – ARP NBCI-2071-12 & 1343-12

Plaintiff states that a grievance "challenging serious prison conditions" was filed with the IGO on November 5, 2012. He alleges he filed all necessary paperwork to establish that he exhausted the ARP process before filing the grievance, but by letter of December 18, 2012, Woolford asked plaintiff to provide additional paperwork. Plaintiff states that he had no access to the documents requested and that he had no idea what documents were being requested. He

---

[2]     Presumably, plaintiff implies he filed an administrative remedy procedure complaint ("ARP") with the Warden and appealed any denial to the Commissioner of Correction.

concludes that Woolford's "intentional act" left him with no way to seek a remedy in any state court "for the wrongs done to him." ECF 1 at pp. 4 – 5.

Similarly, plaintiff claims that the December 19, 2012 letter from Woolford requesting additional documentation was improper because plaintiff sent all the necessary paperwork to the IGO with his grievance. *Id.* at p. 5. Plaintiff again concludes that Woolford's request prohibited him from seeking redress of the "wrongs done to him." *Id.* at p. 6. Plaintiff does not provide any details regarding either of the underlying claims raised in the ARP or grievance.

Food items confiscated (January 4, 2013 letter) – ARP NBCI-2561-12

Plaintiff filed a grievance appealing the dismissal of an ARP regarding food items that he alleged were wrongfully confiscated by the Warden. ECF 1-1 at p. 6. Plaintiff claims he provided all necessary paperwork with his grievance, but Woolford "still insisted that plaintiff send him additional paperworks (sic) that were not relevant to the preliminary review of plaintiff's grievance." ECF 1 at p. 6. Plaintiff again concludes that Woolford "intentionally thwarted" his attempt to exhaust state remedies and he is not unable to access the Maryland state courts to seek redress. *Id.* at p. 7.

Excessive force[3] (March 7, 2013 letter) ARP NBCI-0198-13

Plaintiff states that an ARP he filed was dismissed by the NBCI ARP coordinator and that he was told he had no remedies available to him through the ARP process. Plaintiff states he filed a grievance with the IGO appealing this dismissal. ECF 1 at p. 7.

By letter dated March 7, 2013, Director of the IGO Scott Oakley dismissed the grievance because plaintiff did not appeal the Warden's dismissal of the ARP to the Commissioner of Correction; rather, he simply filed a grievance with the IGO and bypassed that step in the review.

---

[3]     The letter from Director of the IGO Scott Oakley states that plaintiff "complained in [his]original ARP complaint to the Warden . . . that [he was] subjected to an excessive use of force in an incident [plaintiff] acknowledge[d] [he] provoked." ECF 1-1 at p. 8.

ECF 1-1 at pp. 8 – 9. Plaintiff characterizes the dismissal of the grievance as malicious and intentional and claims the grounds for the dismissal was "bogus." ECF 1 at p. 7.

Refusal to send certified mail (January 30, 2014 letter) ARP NBCI-2946-13 & 3071-13

Plaintiff filed an IGO complaint on December 10, 2013, regarding the prison's refusal to send legal mail certified mail. ECF 1 at p. 8. He claims he again sent all necessary paperwork to establish that he had exhausted remedies through the warden and the commissioner. *Id.*

Plaintiff alleges that "Woolford destroyed part of plaintiff's mail then wrote plaintiff a letter claiming that plaintiff had failed to send the IGO proof that he had appealed the warden's decisions to the Commissioner." *Id.* Plaintiff was told to provide the documentation within 30 days and states he had "to pay another inmate 20 stamps to have him send the IGO the Commissioner's decisions by certified [mail] because NBCI officials refused to allow him to send his mail out by certified mail." *Id.*

Although Woolford received the initial information requested, he requested further information from plaintiff that plaintiff alleges Woolford "knows do[es] not exist." *Id.* at p. 9. Plaintiff further alleges that Woolford has ignored his "other grievance." *Id.* Plaintiff concludes that because of Woolford's intentional actions he cannot seek a remedy in state courts. *Id.*

Allegation against Scott Oakley

Plaintiff claims that Oakley was aware of the complaints regarding Woolford and that he was unable to access state courts due to the wrongful actions of Woolford. ECF 1 at pp. 9 – 10. He states that Oakley failed to intervene to protect plaintiff from the wrongful conduct of Woolford. *Id.* at p. 10. Plaintiff further claims that Oakley and Woolford conspired to prevent him from exhausting "state remedies" and denying him access to the state courts. *Id.*

Plaintiff alleges that the conduct described violates his rights to due process under the

Fourteenth Amendment and Art. 19 of the Maryland Constitution. *Id.* at pp. 11 – 12. As relief,

plaintiff seeks declaratory and injunctive relief as well as unspecified compensatory and punitive

damages. *Id.* at pp. 12 – 13.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that
> there is no genuine dispute as to any material fact and the movant
> is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will

defeat the motion:

> By its very terms, this standard provides that the mere existence of
> *some* alleged factual dispute between the parties will not defeat an
> otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club,

Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw

all inferences in her favor without weighing the evidence or assessing the witness' credibility."

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court

must, however, also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

### Conspiracy

To establish a civil conspiracy under §1983, plaintiff must present evidence that defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *See Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996). An essential element for a claim of conspiracy to deprive  plaintiff of a constitutional right, is an agreement to do so among the alleged co-conspirators. *See Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1006-07 (4th Cir.1987).  Without an agreement, the independent acts of two or more wrongdoers do not amount to a conspiracy. *See Murdaugh Volkswagon v. First Nat'l Bank*, 639 F.2d 1073, 1075-76 (4th Cir.1981). Plaintiff must allege facts establishing that defendants shared a "unity of purpose or a common design" to injure him. *Am. Tobacco Co. v. United St*ates, 328 U.S. 781, 809-10 (1946).  Neither the complaint nor plaintiff's opposition response (ECF 24) provide facts to establish that Oakley and Woolford shared a unity of purpose to injure him.  The allegation is simply a conclusory one without even a hint that there existed a conspiracy to prevent him from pursuing valid claims in a court of law.  The claim must be dismissed.

### Mail Claim

A plaintiff's claims regarding his ability to mail documents bears upon his constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  A claim of denial of access to court based on alleged interference with legal mail must still meet the actual injury requirement of *Lewis v. Casey*, 518 U.S. 343 (1996).  Isolated instances of mishandling of inmate

mail do not constitute valid constitutional claims. *Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983).

Plaintiff asserts that Woolford destroyed his mail presumably because he claims that he sent all necessary paperwork was sent with his grievances, yet Woolford contacted him to request additional documentation. Woolford provides an affidavit and records that establish that plaintiff has filed more than 130 grievances since 2001, thus even if plaintiff could establish that some of his mail was mishandled, it constitutes an isolated incident for which no liability attaches. ECF 18 at Ex. 2, p. 2. Woolford further avers that plaintiff's grievances were treated no differently than other grievances filed with the IGO, in reliance on relevant Maryland regulations governing the IGO. *Id.* Indeed, plaintiff's allegation that some grievances were destroyed while the vast majority of his grievances were processed, is simply inexplicable and lends no credence to his claim that Woolford targeted him for some sort of reprisal with respect to the claims asserted. Even assuming documents were misplaced or destroyed in these few instances, plaintiff makes no assertion that he informed Woolford those documents were included, or that he attempted to obtain additional copies for the purpose of responding to the request. Plaintiff also makes no effort to demonstrate that the documentation requested even exists. *See* ECF 24. Absent that evidence, Woolford's conduct cannot be characterized as intentional and plaintiff's claim regarding his mail is vitiated. Woolford is entitled to summary judgment on this claim.

## Access to Courts

The Prison Litigation Reform Act ["PLRA"] requires a prisoner to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other

Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Plaintiff claims that he was improperly denied the opportunity to exhaust administrative remedies which had the effect of denying him meaningful access to the state courts to pursue claims regarding conditions of his confinement.

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show "actual injury" to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a

8

prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* at 399.

In *Christopher v. Harbury*, 536 U.S. 403, 403 (2002), the Court characterized access-to-the courts claims as being in one of two categories. *Id* at 413-14. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arise when a plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id.* at 1209. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress' "in the courts. *Id.* (quoting *Christopher*, 536 U.S. at 415 (brackets in original)) (internal citations omitted)).

Whether the claim is forward or backward looking, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415. "[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416 (footnote omitted). A prisoner's right to access the courts does not include the right to present frivolous claims. *Lewis v. Casey*, 518 U.S. at 353, n.3.

9

The grievance plaintiff filed regarding scalding hot water in the showers alleges in part that he suffered burns as a result of the water temperature; that the Warden dismissed his ARP as frivolous; and the Commissioner of Correction did not respond to his appeal. *See* ECF 24 at Ex. 1, pp. 15 – 18. The ARP filed by plaintiff alleges that he was denied his weekly shower because the shower was broken due to the water being so hot. *Id.* at p. 20. He further claimed that his skin could not tolerate the heat of the water and he asked the officer who escorted him if he could use a different shower and he was told he could not. *Id.* As relief he asked for the broken shower to be fixed. *Id.* The ARP was dismissed with the notation that: "per DCD 185-002 [i]nmates may not seek remedy through a complaint which is not serious or practical in content or form, this complaint is considered frivolous." *Id.*

The letter sent to plaintiff from the IGO in response to his grievance asked plaintiff to "provide the following additional information: the nature of the injuries you suffered, what medical treatment was required and any pertinent documentation." ECF 1-1 at p. 1. Plaintiff contends that this information was irrelevant to a preliminary investigation. ECF 1 at p. 5. It is clear, however, that the only potentially serious allegation raised by plaintiff is that he was burned. Absent supporting evidence for that alleged injury, the claims asserted are frivolous. Expenditure of limited resources to conduct a hearing on a matter that is frivolous is not constitutionally required. The dismissal of this grievance was occasioned by plaintiff's abject refusal to provide pertinent information regarding his claim, and not by a deliberate attempt to prevent him from litigating a legitimate claim.

Plaintiff's claims regarding unspecified allegation which he supports with letters from the IGO dated December 18 and 19, 2012, are subject to dismissal. The underlying claim is not described in the complaint and plaintiff provides no further clarification of the nature of those

claims in his opposition response. ECF 24.  As such, the allegation fails to state a claim upon which relief may be granted.

Plaintiff's grievance regarding the confiscation of food items alleged that officers inventoried his property and would not store his food items while he was on disciplinary segregation.  ECF 18 at Ex. 1, pp. 70 – 71.  Plaintiff claimed that the regulations permitting the officers to confiscate his food were arbitrary and capricious and that they ran afoul of the constitution.  *Id.*  To the extent plaintiff lost an opportunity to litigate this claim in a court of law, his constitutional right of access to courts was not violated.  The underlying claim does not state a viable constitutional claim regarding the conditions of his confinement.  A prison policy was applied to plaintiff as it is with other disciplinary segregation inmates; there is no allegation that he was improperly targeted or that the actions taken were unauthorized.  To the extent plaintiff lost an opportunity to litigate this claim, his constitutional right of access to the courts was not violated.

The grievance plaintiff filed regarding the claim he was subjected to excessive force was dismissed by letter dated March 7, 2013, because plaintiff did not appeal the Warden's response to the Commissioner of Correction.  ECF 1-1 at p. 9.  Plaintiff does not dispute this fact. Dismissal of the grievance due to plaintiff's failure to follow procedural rules for filing a viable grievance is not an intentional deprivation of plaintiff's right of access to courts.  This claim is subject to dismissal.

Plaintiff's grievance regarding the failure to send mail by certified delivery (IGO No. 2013-2188 and ARP NBCI 2946-13) concerns what he describes as a long-standing issue with prison policy that does not allow inmates to send out legal mail by certified mail at the prison's expense, or to charge the inmates the fee for doing so at a later date.  ECF 24 at pp. 1 – 3.

Plaintiff claims that because of this policy a lawsuit he filed in the Circuit Court for Allegany County, Maryland was dismissed for failure to prosecute because he could not properly serve the defendant in that case, Lt. Bradley Wilt. *Id., see also* ECF 24-1.

In response to the grievance plaintiff filed concerning the certified mail policy, a letter dated January 22, 2014, notified plaintiff that he was required to demonstrate exhaustion of the ARP process when he submitted the grievance. ECF 1-1 at pp. 10- 11. The ARP itself was dismissed because plaintiff failed to establish that he was required to use certified mail for the items he attempted to send without payment of the fees. ECF 24 at Ex. 1, p. 119. Plaintiff was asked to provide copies of his appeal to the Commissioner and any receipt or response received from the Commissioner. ECF 1-1 at p. 11. Plaintiff was given 30 days to do so. *Id.* He was also granted an additional 30 days within which to comply. ECF 24 at Ex. 1, p. 121.

After plaintiff provided the documents related to the exhaustion of his ARP, he was asked to provide "documentation that the correspondence was required to be sent by certified mail and copies of [his] request to [his] case manager for the additional postage." *Id.* at p. 127. This information was requested pursuant to Code of Maryland Administrative Regulations (COMAR) 12.0701.03(B)(6) which imposes a duty on the Executive Director of the IGO to conduct a preliminary investigation. *Id.* The grievance, or one raising the same claim,[4] was dismissed without a hearing because plaintiff "failed to cite any federal or state constitutional, statutory, regulatory, or policy provision that has conferred" on plaintiff the "absolute right to send legal mail by certified or registered mail, without any cost to you." *Id.* at p. 156. Dismissal of a grievance that plaintiff could not or would not provide additional evidence to support is not a deliberate denial of his right of access to the courts.

---

[4]     There does not appear to be a copy of the decision dismissing IGO No. 2013-2188 in the record, but the dismissal of 2013-2189 addresses a very similar claim.

Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In particular, . . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). The defense provides protection for public officials for mistakes of law, mistakes of fact, or a combination of the two. *See Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting). Qualified immunity is a defense from suit, not simply liability, which is lost if a matter is improperly permitted to go to trial. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Resolution of whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In order to determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed by this Court. Although the Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001) directed a rigid approach to the inquiries involved, the requirement that the two-prong analysis must be "considered in proper sequence" has since been revised. *Katz*, 533 U.S. at 200. Courts are now "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 818.

The first prong is whether ""[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. If the evidence establishes a violation of a constitutional right, the second prong is to assess whether the right was "clearly established" at the time of the events at issue. *Id.* If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability. The "answer to both *Saucier* questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v. Purnell*, 501 F.3d 374, 377-78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293-94 (4th Cir. 2003)).

To the extent that any of plaintiff's underlying claims may have been meritorious, Woolford and Oakley are entitled to qualified immunity. In the discharge of their official duties, that include review of a relentless stream of grievances that cover all aspects of prison life, defendants are not liable for dismissing a claim that may later be found meritorious in the state courts. The asserted right – to file what is in essence a tort claim in state court – is not a clearly established right; these claims are the sort of legal actions for which prisoners are not guaranteed a constitutional right of access to the courts. This court is familiar with plaintiff's litigious nature and the volume of claims he files. To the extent he is under the impression that he is entitled under the Constitution to file any and all claims that he might feel the need to file, he is mistaken. Administrative remedies and the IGO process serve the purpose of resolving meritorious complaints, they are not simply precatory steps to the courthouse door.

Woolford's motion shall be granted and the complaint as to Oakley shall be dismissed.  A separate order follows.

_____
Date

_____
J. Frederick Motz
United States District Judge

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2017 FEB 15   AM 2: 5

CLERK'S OFFICE
AT BALTIMORE

BY_____
DEPUTY

15